THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JERRY THOMAS *et al.*, Defendants-Appellants.

First District (2nd Division)    No. 62731

Opinion filed June 14, 1977.

James J. Doherty, Public Defender, of Chicago (James H. Reddy, Deborah N. Michels, and Thomas F. Finegan, Assistant Public Defenders, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Larry L. Thompson, and Kenneth T. McCurry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Defendants, Jerry and Leon Thomas, were charged by indictment with the offense of murder in violation of section 9—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1971, ch. 38, par. 9—1). Upon a jury trial both defendants were found to be guilty as charged. Judgments were entered upon the verdicts and each defendant was sentenced to serve a term of confinement in the Illinois State Penitentiary of 20 to 60 years.

From entry of the judgments of conviction defendants appeal contending: (1) that the evidence properly adduced at trial was insufficient to establish their guilt beyond a reasonable doubt; (2) that the trial court erred in admitting into evidence certain hearsay statements characterized as dying or spontaneous declarations; (3) that certain conduct of the prosecution in presenting its case to the jury was improper and served to deny defendants a fair trial; and, (4) that the trial court committed prejudicial error in its instructions to the jury.

A review of the evidence adduced at trial establishes that at approximately 2:30 a.m. on October 14, 1972, three armed intruders entered a Martin Service Station located at Sacramento and Taylor Streets in Chicago, Illinois. Following an exchange of gunfire between the assailants and the lone attendant, Ollie Bell, the intruders fled the scene carrying an injured accomplice. Bell, who had also been struck by gunfire, fell mortally wounded. Quantities of coins, cigarettes and other items of inventory were found strewn about the station's office.

The assailants' escape was observed by Jack Porter and Janella Profit. Both Profit and Porter testified that as they approached the station at approximately 2:30 a.m. on the date in question, each heard the sound of shots emanating from within the station, prompting them to run to the porch of a nearby home. From this vantage point, approximately 50 feet from the station and aided by illumination provided by several electrical lights positioned on the street and about the station, Porter and Profit observed three male Negroes exit the station building. Two of the men were dragging a third man between them, supporting him by his arms in

such a manner that the man's feet and knees were in contact with the ground.

Jack Porter testified that he particularly observed the individual being assisted from the building and indicated that the man was "in his twenties," of slim stature, approximately 6 feet in height and wore grey, dark checkered trousers and a brown leather jacket. Janella Profit testified that at the time of the escape and for a period of 10 to 15 seconds she observed the face of the man being dragged from the area. Profit subsequently identified defendant, Jerry Thomas, as the latter individual.

Shortly after 2:30 a.m., two additional individuals, Marshall Unseld and Lonnie Mathis, entered the station's lot and drove near its office where they observed a bullet hole in the door. Upon further investigation, Unseld discovered Ollie Bell prostrate on the office floor and beckoning for assistance. Mathis entered the building and recovered two weapons, a .38 calibre revolver held by Bell and a .45 calibre pistol lying on the floor. Mathis also observed "a lot of change, glasses, tissues [and] packages of cigarettes" strewn about the floor.

Mathis testified, over defense objections, that he had a conversation with Bell on this occasion in which Bell indicated that he had been shot in the stomach and hand. Bell also indicated that one, or perhaps two, of the assailants had also been wounded in the exchange of gunfire.

Chicago Police Department Officer Lee Seward testified that he arrived on the scene shortly thereafter and also conversed with Bell. According to Seward, Bell informed him that three black males had tried to rob him; that they "shot it out"; and, that at least one of the assailants had been wounded.

Officer Seward accompanied Bell to hospital facilities where Bell repeated his earlier statements and, when questioned regarding a description of the assailants, indicated that the assailants dragged away one of their number who was wearing checkered trousers. Attempts to resuscitate Bell proved futile and he expired of his wounds at 4:20 a.m. on October 14, 1972.

Both defendants had been admitted to Cook County Hospital with gunshot wounds at approximately 3 a.m. on October 14, 1972. On this occasion, Chicago Police Department Investigator William Boyd interviewed Leon Thomas who indicated that he and Jerry Thomas had been shot by several armed robbers near a restaurant located in the vicinity of Homan Avenue and Lake Street.

Investigators Percy Hollins and Robert Wasmund subsequently questioned defendants at hospital facilities regarding the circumstances surrounding the infliction of defendants' injuries. Jerry Thomas informed Officer Hollins that he did not know who had shot him, the location of the

assault or why he was shot. Leon Thomas, on this occasion, informed Officer Hollins that he had been shot during the course of an armed robbery which took place near Kedzie Avenue and Franklin Boulevard.

Investigator Hollins also testified that he interviewed Sally Thomas, the mother of Leon Thomas. According to Hollins, she indicated that her son had told her that he and Jerry Thomas had gone to purchase some food on the occasion of the shooting and had briefly stopped in a gas station. As they were preparing to leave, four male Negroes approached, demanded and obtained six dollars, and thereafter shot defendants.

Investigators Hollins and Wasmund also interviewed Jack Porter who described the clothing of the man who had been dragged from the service station. The investigators obtained the clothing worn by Jerry Thomas at the time of his admittance to the hospital, including a pair of grey and black trousers torn at the knee and a pair of black suede boots bearing abrasion marks on the toes. Porter identified the trousers as being the same type as those worn by the injured felon.

At Cook County Hospital, Investigator Hollins also spoke with an individual who identified himself as Larry McBride. McBride informed the investigator that he had driven Jerry and Leon Thomas to the hospital and that the latter had informed him that their injuries were sustained during the course of an armed robbery which took place at Kedzie Avenue and Franklin Boulevard.

On October 17, 1972, Investigator Frank Bertucci also interviewed Leon Thomas. The latter indicated that he and Jerry Thomas had been shot by one of three black men who had robbed them in the vicinity of Homan Avenue and Walnut Street. Bertucci also testified that Leon Thomas had informed him that both defendants were driven to the hospital by one Barry Blackman. Leon Thomas was unable to provide Investigator Bertucci with a description of his assailants.

On October 19, 1972, Investigator Bertucci showed photographs of 10 men to both Jack Porter and Janella Profit. Profit identified a photograph of Jerry Thomas as portraying the man who had been dragged from the service station. On November 1, 1972, Profit also viewed and identified Jerry Thomas as the latter was recuperating in Cook County Hospital.

Medical testimony adduced at trial established that Jerry Thomas had sustained a bullet wound to the left "delta" area of his left upper arm which bullet was still lodged within his body. Leon Thomas was wounded on the posterior aspect of his left arm by a bullet which passed through his body and was not recovered. He was also wounded by a bullet which entered the posterior-lateral aspect of his left chest. The bullet which caused this injury was not medically extracted. As a consequence, none of the bullets which caused the defendants' wounds were recovered.

No fingerprints suitable for comparison were recovered from the scene. Ballistics evidence positively established that a bullet recovered from Bell's body was fired from the .45 calibre pistol recovered from the floor of the station's office. Serological tests performed upon this exhibit as well as a cigarette package recovered from the scene evidenced minute quantities of Type A blood. The clothing worn by Jerry Thomas was also tested for the presence of blood. The checkered trousers bore traces of Type A bloodstains. Both Ollie Bell and Leon Thomas evidence blood Type A; Jerry Thomas evidences blood Type O.

Post-mortem examination of the body of Ollie Bell revealed that he sustained wounds from three .45 calibre bullets. Two of these wounds were in the abdomen and occasioned multiple internal injuries.

Both defendants testified at trial and each denied having participated in the crime charged in the indictment. Each indicated that on the afternoon of October 13, 1972, Leon Thomas sought employment at the Abbott Construction Co. where Jerry Thomas was employed as a labor foreman. The pair met again later that evening and at approximately 2 a.m. drove to a restaurant located near Homan Avenue and Walnut Street. While Leon Thomas remained in the car, Jerry Thomas walked to the intersection of Homan and Walnut where he was approached by three young men. The men spoke to Jerry Thomas for 5 to 15 minutes and eventually demanded all of Thomas' money. Leon Thomas approached the intersection and one of the assailants drew a pistol. Both defendants surrendered their money and began walking back to their automobile.

As they had walked 10 to 15 feet, the individual armed with the pistol began firing and both defendants were struck. Leon Thomas continued to the car and then returned in order to aid Jerry Thomas who had been dragging himself along the pavement. Leon Thomas drove to his home at 435 N. Lawndale Avenue where he obtained the assistance of Barney Blackman who drove both defendants to Cook County Hospital.

In rebuttal, the State adduced the testimony of Adele Wolf, a bookkeeper for the Abbott Construction Co. She produced time sheets from the company's records which indicated that Jerry Thomas did not work on October 13, 1975, nor was he paid at a foreman's scale.

## I.

Defendants initially contend that the evidence properly adduced at trial was insufficient to establish their guilt beyond a reasonable doubt. Specifically, defendants assert that the testimony of Janella Profit, which testimony served to identify defendant Jerry Thomas as one of the perpetrators of the offense, was vague, uncertain and unworthy of belief.

■■ It is settled beyond peradventure that where the identification of

an accused is at issue, the testimony of even one witness is sufficient to convict, provided that witness is credible and that he viewed the accused under circumstances which would permit a positive identification. (*People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631.) Where the trier of fact, who enjoyed the opportunity to observe the demeanor of the witness, renders a decision based upon credible and substantial evidence which is sufficient to convict, the verdict may not be set aside merely because of minor inconsistencies which the trier of fact properly chose to resolve in favor of the State. *People v. Pelegri* (1968), 39 Ill. 2d 568, 237 N.E.2d 453; *People v. Wright* (1972), 3 Ill. App. 3d 829, 279 N.E.2d 398.

In the instant case, Profit experienced ample opportunity to observe the assailants from a distance of approximately 50 feet, under adequate lighting conditions for a period of time sufficient, under the circumstances, to permit a positive identification. (See *People v. Williams* (1975), 25 Ill. App. 3d 604, 323 N.E.2d 499 (abstract).) We have examined the record and find, in accord with the trier of fact, that Profit's testimony was generally clear and convincing and that her identification of defendant Jerry Thomas as the individual being assisted from the service station was positive and unwavering. Moreover, physical evidence adduced at trial, consisting of Jerry Thomas' damaged trousers and shoes, serves to corroborate Profit's description of the assailants' escape as well as Jack Porter's description of the injured felon's clothing.

The evidence presented by the State is not improbable, unconvincing or contrary to human experience. The State's case, in view of all the evidence, has few inconsistencies and none sufficient to raise a reasonable doubt as to defendant Jerry Thomas' presence at the scene of the crime. See *People v. Perry* (1974), 21 Ill. App. 3d 18, 315 N.E.2d 173.

■■ Within this context, the evidence adduced by the State was also sufficient to establish Leon Thomas' presence at the scene of the offense. It is well settled that "there is no distinction in law between direct and circumstantial evidence. Circumstantial evidence is legal evidence and it is accorded the same weight and effect as direct evidence." (*People v. Fetterman* (1973), 14 Ill. App. 3d 120, 131, 302 N.E.2d 218, 226.) It has further been held that:

> "A conviction may be sustained upon circumstantial evidence as well as direct evidence, it being necessary only that the proof of circumstances must be of a conclusive nature and tendency leading, on the whole, to a satisfactory conclusion and producing a reasonable and moral certainty that the accused and no one else committed the crime." *People v. Bernette* (1964), 30 Ill. 2d 359, 367, 197 N.E.2d 436, 441.

Leon Thomas adamantly maintained that at the time of Ollie Bell's murder he was in the company of Jerry Thomas. The latter was positively

identified as he fled from the scene in the company of two individuals. Shortly thereafter, both defendants were admitted to hospital facilities at a time and bearing wounds consistent with their participation in the offense charged in the indictment. Blood stains discovered on the murder weapon and Jerry Thomas' trousers were consistent with the blood type of both Leon Thomas and Ollie Bell. Moreover, defendants' attempt to establish an alibi proved unsuccessful. Upon their admittance to the hospital, Jerry Thomas was unable to explain his wounds and Leon Thomas provided several conflicting accounts as to the nature and location of their alleged assaults.

■■ Such evidence was sufficient to establish defendants' presence at the scene of Ollie Bell's murder beyond a reasonable doubt.

Nor can defendants avoid criminal responsibility for Bell's murder. Section 5—2(c) of the Illinois Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 5—2(c)) provides that a person will be held accountable for the conduct of another when,

> "Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid such other person in the planning or commission of the offense."

While mere presence or negative acquiescence at the scene of an offense does not make a person a party to that offense, one may aid and abet the offense without actively participating in the overt act; circumstances may demonstrate a common design to commit the offense, upon which guilt may be predicated. (*People v. Greene* (1975), 27 Ill. App. 3d 1080, 328 N.E.2d 176.) An accused's presence and his lack of opposition to the offense may be considered with all other evidence in determining whether he is accountable for the offense. *People v. Harris* (1969), 105 Ill. App. 2d 305, 245 N.E.2d 80, *aff'd* (1973), 55 Ill. 2d 15, 302 N.E.2d 1.

■■ In the instant case, the evidence adduced at trial tended to establish defendants' unexplained presence in the service station's office at approximately 2:30 a.m., that one of their number was armed with a .45-calibre pistol used to kill Ollie Bell, their failure to assist the victim or report the offense and their flight from the scene. Subsequently, quantities of coins and inventory were discovered strewn about the office. Such evidence constitutes a sufficient basis upon which the trier of fact might properly conclude that defendants entered the premises with the requisite intent to commit the offense of armed robbery and thereby establish defendants' criminal responsibility for the death of Ollie Bell which resulted from the aborted armed robbery. (See *People v. Danner* (1969), 105 Ill. App. 2d 126, 245 N.E.2d 106.) Their apparent failure to complete the robbery is without consequence. *In re Armour* (1973), 15 Ill. App. 3d 529, 305 N.E.2d 47, *aff'd* (1974), 59 Ill. 2d 102, 319 N.E.2d 496.

## II.

Defendants also contend that the trial court erred in admitting into evidence certain hearsay statements characterized as dying or spontaneous declarations. Specifically, defendants object to testimony adduced regarding Bell's disclosures to Lonnie Mathis and Officer Seward that he was wounded by three men who had unsuccessfully attempted to rob him; that at least one of the assailants had been wounded by Bell's return fire; and, that one of their number, wearing checkered trousers, was assisted from the scene during the course of the assailants' escape.

■■ The law with respect to dying declarations has been firmly established in Illinois. They are broadly defined as extrajudicial statements of fact by the victim, concerning the cause and circumstances of a homicide. In order that such statements be admissible into evidence, as an exception to the rule against hearsay evidence, it must appear that they were made by the victim under the fixed belief and moral conviction that death is impending and certain to follow almost immediately, without opportunity for repentance and in the absence of all hope of avoidance, when he has despaired of life and looks to death as inevitable and at hand. *People v. Tilley* (1950), 406 Ill. 398, 94 N.E.2d 328; 5 Wigmore on Evidence §1443, at 241-42 (3d ed. 1940); McCormick, Evidence §281 *et seq.* (2d ed. 1972).

In ascertaining the declarant's consciousness of his approaching death recourse must be had to all facts and circumstances attending the party giving the dying declaration at the moment of its utterance. Within this context, the declarant must be sufficiently possessed of his mental faculties as to be able to have accurately perceived, recollected and communicated the circumstances surrounding his death. (*People v. Scott* (1972), 52 Ill. 2d 432, 288 N.E.2d 478.) In making its preliminary determination, outside the presence of the jury, of the challenged statements' admissibility, the trial court must be satisfied beyond a reasonable doubt that the declarant believed himself *in extremis* when the statements were made. *People v. Beier* (1963), 29 Ill. 2d 511, 194 N.E.2d 280.

The record in the instant case fails to disclose that the trial court effected such a determination. Nor is it apparent what evidence the trial court considered in reaching its determination regarding the admissibility of the testimony at issue.

Nor is it beyond dispute whether the evidence adduced at trial, considered as a whole, was sufficient to place the aforementioned testimony within the purview of the dying declaration exception to the hearsay rule.

In the instant case, evidence was adduced to establish that the

statements in question were uttered within minutes after Bell was mortally wounded; that Bell announced to Lonnie Mathis that he was hurt by two gunshot wounds to the stomach and hand; and, that Bell cried for assistance. Bell's statements were subsequently repeated at a time when Bell was undergoing emergency medical treatment. These procedures proved unsuccessful and Bell expired of his wounds in less than two hours. Post-mortem examination of Bell's body revealed that Bell sustained wounds from three .45-calibre rounds and that two such wounds were to the abdomen causing multiple internal injuries.

Such factors tend to suggest that Bell must have been aware of the seriousness of his condition at the time the statements in question were uttered. One cannot imagine what self-serving purpose might be furthered by Bell's statement that three men had tried to rob him.

■■ Defendants, however, correctly point out that there is no direct evidence that Bell considered himself *in extremis*. There was ample opportunity for an attending physician to inform the victim of his condition so as to evoke an acknowledgement of the latter's approaching demise. (See *People v. Tilley* (1950), 406, Ill. 398, 94 N.E.2d 328.) There is no indication of record that the situation in the instant case was so dire that such confirmation was medically inadvisable or that the opportunity for such acknowledgement did not present itself. Therefore, we hold that the evidence adduced at bar was insufficient to establish beyond a reasonable doubt that Bell considered himself *in extremis* at the time his statements were uttered.

It remains to be considered whether the testimony in question was admissible into evidence as a spontaneous declaration and, hence, within that exception to the hearsay rule.

This exception was examined by the Illinois Supreme Court in *People v. Damen* (1963), 28 Ill. 2d 464, 471, 193 N.E.2d 25, 29, wherein it is noted:

> "A spontaneous exclamation may be defined as a statement or exclamation made immediately after some exciting occasion by a participant or spectator and asserting the circumstances of that occasion as it is observed by him. The admissibility of such exclamation is based on our experience that, under certain external circumstances of physical or mental shock, a stress of nervous excitement may be produced in a spectator which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, rather than reason and reflection, and during the brief period when consideration of self-

interest could not have been fully brought to bear, the utterance may be taken as expressing the real belief of the speaker as to the facts just observed by him."

Thus, three factors have been deemed necessary in order to bring a statement within the spontaneous declaration exception to the hearsay rule: (1) an occurrence sufficiently startling to produce a spontaneous statement; (2) an absence of time to fabricate; and (3) a relation of the statement to the circumstances of the occurrence. *People v. Parisie* (1972), 5 Ill. App. 3d 1009, 287 N.E.2d 310.

■■ In the instant case, there can be no doubt that Bell's statements were prompted by and concerned the presence of armed gunmen on the premises in the process of committing an armed robbery during the course of which Bell was wounded by gunfire. Such statements were uttered sufficiently near the time of the confrontation to insure their trustworthiness and to negate any likelihood of fabrication. (*People v. Poland* (1961), 22 Ill. 2d 175, 174 N.E.2d 804.) Their admission into evidence was proper. *People v. Vinson* (1977), 49 Ill. App. 3d 602, 364 N.E.2d 364.

### III.

Defendants also contend that certain conduct of the prosecution in presenting its case to the jury was improper and served to deny defendants a fair trial. Specifically, defendants assert that during the course of its closing argument to the jury the prosecution misrepresented certain evidence and improperly shifted the burden of proof to defendants.

We note at the outset that defendants have failed to preserve this issue for appeal. Failure to make a timely objection during closing argument operates as a waiver of error allegedly contained therein. (*People v. Moore* (1973), 55 Ill. 2d 570, 304 N.E.2d 622.) Similarly, the failure to include such an error in a written post-trial motion for new trial precludes consideration of that issue on appeal. (*People v. Witherspoon* (1975), 33 Ill. App. 3d 12, 337 N.E.2d 454.) Since defendants objected to the State's closing argument neither at trial nor in their post-trial motion, they have waived consideration of any alleged errors contained in that argument.

■■ In any case, consideration of the remarks in question reveals no impropriety. Specifically, the prosecution properly commented on defendants' failure to establish that a shooting took place in the vicinity of Homan Avenue and Walnut Street on the occasion in question. In claiming that they were shot in that locale, defendants sought to assert an alibi defense. The prosecution briefly noted, in its closing argument, that this alibi was unsubstantiated by any person in the area who might have been a potential witness to such shootings. The failure to produce any

such witnesses or explain their absence, though not a substantial proof of the charge, is a circumstance entitled to some weight in the minds of the jury, and, as such, is a legitimate subject of comment by the prosecution. *People v. Stephens* (1974), 18 Ill. App. 3d 971, 310 N.E.2d 824.

Such additional comments as are currently complained of on appeal represent reasonable inferences from the evidence adduced at trial. None of the comments asserted on appeal as grounds for reversal may be said to be of such magnitude. *People v. Nicholls* (1969), 42 Ill. 2d 91, 245 N.E.2d 771.

## IV.

Defendants finally contend that the trial court erroneously instructed the jury with respect to the offenses of felony murder, armed robbery and the principle of accountability as such instructions were not based upon matters in evidence and in failing to tender, *sua sponte*, an instruction defining the offense of "attempt."

■■ It is axiomatic that an instruction, in order to be properly given, must be supported by some evidence, but not necessarily undisputed evidence. (*People v. Curtis* (1969), 116 Ill. App. 2d 298, 254 N.E.2d 87.) As previously noted, there was ample evidence adduced at trial which served to establish that Ollie Bell was killed during the course of an armed robbery and that defendants were accountable for Bell's death. Within this context, the instructions tendered to the jury which properly defined the concepts of accountability, felony murder and armed robbery were proper.

■■ Defendants also contend on appeal that the trial court erred in omitting an instruction defining "attempt." The State maintains that defendants' failure to tender such an instruction or raise the issue in their written post-trial motion precludes consideration of the issue on appeal. However, it appears that this matter was brought to the attention of the trial court.

The jury was instructed *inter alia*:

> "[IPI Criminal No. 7.01; People's Instruction No. 14]
>
> A person commits the crime of murder who kills an individual if, in performing the acts which cause the death,
>
> * * *
>
> he is attempting to commit or is committing the crime of Armed Robbery."

Defendants were not charged with or convicted of the offense of "attempt." (Ill. Rev. Stat. 1971, ch. 38, par. 8—4.) Nor are the elements of the offense of "attempt" material to a jury's determination of whether defendants were "attempting to commit" *or* "were committing" the offense of armed robbery which resulted in Bell's death. Moreover, the

evidence adduced at trial was sufficient to establish beyond a reasonable doubt that Ollie Bell was shot during the course of an abortive armed robbery. The failure of the trial court to instruct the jury on the offense of "attempt" resulted in no prejudice to defendants.

For the aforementioned reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

DOWNING, P. J., and PERLIN, J., concur.