THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GERALD NELSON, Defendant-Appellant.

First District (3rd Division)   No. 78-1165

Opinion filed June 27, 1979.

James J. Doherty, Public Defender, of Chicago (Kathleen O'Donovan and Donald S. Honchell, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, James Veldman, and Paul D. Kerpan, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SIMON delivered the opinion of the court:

Gerald Nelson's appeal from his murder conviction and his sentence of 100 to 300 years in the penitentiary, plus 4 years parole, lacks merit.

The jury was instructed to convict the defendant if the homicide occurred while he was committing or attempting to commit the crime of armed robbery. This instruction (Illinois Pattern Jury Instructions,

Criminal, No. 7.01 (1968)) derives from the language of the statute defining murder, which provides that an unjustified killing is murder if the killer "is attempting or committing a forcible felony * * *." (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(a)(3).) The jury instructions defined armed robbery, but not "attempt." The defendant argues that "attempting" means committing an attempt, as "commits an attempt" is defined by section 8—4 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 8—4)—in other words, that the defendant can be guilty of felony murder only if he was *committing* a felony, namely attempt armed robbery.

The defendant then argues that the trial judge's failure to instruct the jury on the elements of attempt armed robbery left the jury unable to decide properly that the defendant committed an attempt armed robbery. Because of the omission of this instruction, the defendant contends, the jury could not properly convict him of felony murder. Since the jury's verdict did not reveal whether it found the defendant guilty of felony murder, defined in section 9—1(a)(3), or ordinary murder, described in section 9—1(a)(1) or (2), the defendant's position is that we must reverse his conviction, on the assumption it rested entirely on a type of murder on which the jury was not adequately instructed.

We note first that the trial court gave precisely the instructions set out in IPI Criminal. The Committee Notes to instruction No. 7.01 direct that when the felony-murder instruction is given, it should be followed immediately by a definition of the applicable forcible felony, *i.e.,* the one the defendant may have been attempting to commit or committing; but the Notes say nothing about defining "attempt." The defendant, therefore, is saying in effect that IPI is erroneous in any case in which the forcible felony is not successfully completed.

The position the defendant advances in this case has been argued twice before in this State, both times unsuccessfully. The two decisions, however, approached the issue differently. In *People v. Thomas* (1st Dist. 1977), 49 Ill. App. 3d 961, 973, 364 N.E.2d 641, the court held that "the elements of the offense of 'attempt' [are not] material to a jury's determination of whether defendants were 'attempting to commit' *or* 'were committing' the offense of armed robbery which resulted in * * * death." In *People v. Miner* (5th Dist. 1977), 46 Ill. App. 3d 273, 360 N.E.2d 1141, the court explained that it is unnecessary to define a word in a jury instruction if the word is in general use. The defendant in *Miner* argued that the lack of a definition of "attempt" allowed the jury to convict him without finding that he had an intent to commit the forcible felony; but the court rejected this argument, reasoning that the ordinary meaning of the word "attempting" adequately conveyed to the jury that there must be intent. Nelson tries to distinguish *Miner* on the ground that *Miner* discussed only the issue of intent, whereas this case raises also the issue of

whether the defendant took a substantial step toward the commission of the crime of armed robbery (Ill. Rev. Stat. 1977, ch. 38, par. 8—4(a)). But the reasoning of *Miner* is easily extended. In ordinary usage, "attempt" or "attempting" conveys something more than bare intent. It signifies doing something to further that intent.

The State advances yet another possibility: that "attempting" in the felony-murder statute simply means "intending," the mental state alone. This is at least plausible. The felony-murder doctrine, after all, establishes only the mental state that condemns a killing, the criminal act, as murder. The theory is that a forcible felony is so inherently dangerous that a homicide occurring in the course thereof should be held without further proof to be within the "strong probability" (par. 9—1(a)(2)) classification of murder. (Ill. Ann. Stat., ch. 38, par. 9—1, Committee Comments—1961, at 11 (Smith-Hurd 1972).) In other words, an attempt to commit a crime that is very likely to get out of control and cause death or grievous injury is held to demonstrate a *willingness* to cause that result. (In section 8—4, in contrast, a substantial step toward the commission of the attempted offense is required as the *actus reus* of the offense of attempt.) Indeed, the felony-murder doctrine was. formerly phrased in terms of "prosecution of a felonious intent" (former Ill. Rev. Stat. 1961, ch. 38, par. 363; *People v. Kolep* (1963), 29 Ill. 2d 116, 193 N.E.2d 753; *People v. Doherty* (1963), 28 Ill. 2d 528, 193 N.E.2d 37); and the Committee Comments to section 9—1 indicate an intention to codify, not to change, the contemporary Illinois law of murder.

To understand and organize all these approaches, it helps to realize that there are really two stages to consider in resolving Nelson's argument, two questions to answer. First, what does "attempting" in the murder statute mean? Does it have the same meaning as "attempt" in section 8—4, or does it mean something else, and if so, what? Second, whatever we conclude the statutory meaning is, does the ordinary use of the word "attempting" convey that meaning adequately? The various theories may be arrayed according to how they answer these two questions.

The defendant's view is that the statutory meaning in section 9—1 is that of section 8—4, that the ordinary meaning is different, and that the undefined word "attempting" is therefore inadequate to convey the true meaning to the jury. The State's view is that the statutory meaning is not the section 8—4 meaning, but simply "intending." Since even the ordinary usage of the word conveys more than intent, the State, like the defendant, rejects the ordinary meaning. But since the difference between the ordinary meaning and the meaning advanced by the State favors the defendant, he cannot complain; only the State, in a case where little or nothing was done in furtherance of a felonious intent, could demand a clarifying definition.

Both *Thomas* and *Miner* at least imply that the undefined word "attempting" is adequate; but they appear to differ on why. The *Thomas* view is that the statutory meaning *is* the popular one, whatever that may be: the legislature simply used the word "attempting" in section 9—1(a)(3) in its ordinary sense, and the jury will understand the word in the same way the legislators did. The *Miner* view is that the statutory meaning is that of section 8—4, but that the word "attempting" adequately conveys *that* meaning; section 8—4 does not make "attempt" a new and strange word of art, but simply clarifies the ordinary meaning.

We think the simplest and most satisfactory approach is that of *Thomas*: There is no need for any jury instruction defining "attempt," because "attempting" as used in section 9—1(a)(3) means precisely what everybody, including the jurors, understands it to mean, and no more. Section 8—4 exists to solve an entirely different legal problem, and "attempt" in that statute may mean something else.

■■ Actually, the outcome of this case does not depend critically on theoretical constructions of either statute. Under any reasonable definition of "attempt," the defendant was attempting armed robbery. It is undisputed that Nelson pulled a gun on a bartender standing at a cash register, and told him to lie down. The State's evidence showed that when the owner of the bar said "you've got to be kidding" and started toward Nelson, Nelson fired at him from only a few feet away, killing a bystander. The defendant claims that the gun went off only in the struggle when the owner grabbed him; but this factual dispute does not weaken the felony-murder theory. Nelson's acts were unquestionably a "substantial step" toward armed robbery, and we do not doubt that the jury would have convicted Nelson even if it had heard an instruction defining "attempt" as the defendant suggests. The omission of such an instruction, even if that omission were error, could not have injured the defendant and so does not merit reversal. (*People v. Savaiano* (1976), 66 Ill. 2d 7, 359 N.E.2d 475.) The defendant's conviction must, therefore, be affirmed.

We next consider the length of the sentence the defendant received. He asserts that his sentence is so excessive as to be an abuse of discretion because he insists that he had no intention to kill. But weighing the considerable evidence that Nelson fired wilfully, the trial judge could properly have decided that Nelson intended to kill or do great bodily harm, or at least knew that his acts created a strong probability of such results, and sentenced him accordingly. Even if the gun did go off in a struggle, as Nelson says, the theory that felony murder is a subclass of "strong probability" murder is especially realistic in this case: Nelson knew at the time he committed this crime that an armed robbery venture might have even more serious consequences for only 5 days earlier he

engaged in the robbery of another bar during which he shot the bartender.

■■ Perhaps the murder was not carefully premeditated. But there are no degrees of murder in Illinois; a demonstrated willingness to kill wantonly, casually, at the slightest opposition to the killer's criminal adventures, does not necessarily deserve a shorter sentence than a more deliberate, and therefore more limited, readiness to take life. In a proper case, 100 to 300 years may be a reasonable sentence for an impromptu killing.

■■ This is such a case. Section 9—1(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(b)) provides: "Aggravating factors. A defendant * * * may be sentenced *to death* if: * * * 6. the murdered individual was killed in the course of another felony if: (a) [he] was actually killed by the defendant * * *; and (b) the defendant killed [him] * * * with the knowledge that the acts which caused the death created a strong probability of death or great bodily harm to * * * another; and (c) the other felony was * * * armed robbery * * *." (Emphasis added.) Gerald Nelson had three previous felony convictions. He showed no regrets; he refused to be interviewed for a presentence report, and was admonished by the judge. It was no abuse of discretion for the circuit court judge, considering both the circumstances of the crime and the history and character of the defendant, to sentence him as a callous and incorrigible offender.

Judgment affirmed.

McGILLICUDDY and RIZZI, JJ., concur.