659 P.2d 22

STATE of Arizona, Appellee,

v.

Ruben C. ZARAGOZA, Appellant.

No. 5432.

Supreme Court of Arizona,
In Banc.

Jan. 10, 1983.
Rehearing Denied Feb. 16, 1983.

Robert K. Corbin, Atty. Gen., William J. Schafer III, Chief Counsel, Crim. Div., David R. Cole, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, Michael G. Sullivan, Deputy Public Defender, Phoenix, for appellant.

GORDON, Vice Chief Justice:

On September 28, 1981, a jury found appellant guilty of first degree murder in violation of A.R.S. § 13–1105(A)(2). An aggravation-mitigation hearing was set for October 26, 1981. Because appellant was on probation for a prior aggravated assault conviction at the time of the murder the disposition hearing in connection with the probation revocation was also set for October 26, 1981. At the hearing on October 26 the trial court revoked appellant's probation and sentenced him to 1.875 years in prison for aggravated assault. The court then sentenced appellant to death for the first degree murder. Appellant now challenges the conviction and sentence for murder and the revocation of probation and sentence for aggravated assault. We have jurisdiction to review the conviction of murder and death sentence under Ariz. Const. Art. 6, § 5(3) and A.R.S. § 13–4031. We have jurisdiction to review the revocation of probation and sentence for aggravated assault under Ariz.R.Sup.Ct. 47(e)(5). We affirm.

Winifred Duggan, the victim in this case, was a seventy-eight-year-old woman. A

lobotomy had been performed on her sometime in the 1930's and she had limited mental capabilities and was easy to manipulate.

At about 8:30 or 8:45 on the evening of May 26, 1981, appellant and Winifred Duggan were seen in a liquor store near Sixth Avenue and Van Buren in Phoenix. Winifred appeared to be unaware of where she was and appellant was controlling her. Appellant had Winifred's purse and refused to give it to her when she reached for it. Appellant took money out of the purse and bought a can of beer and a pint bottle of white port wine. They then left the store.

Some time between 9:00 and 10:00 that same evening appellant and Winifred approached some people who were drinking beer on the porch of their apartments on Sixth Avenue. Winifred appeared to be nervous or scared and appellant spoke for her whenever she was spoken to. Appellant and Winifred remained there for 15 to 20 minutes. During that time both of them were seen drinking beer.

At 11:10 that night appellant was seen in the alley behind the same apartments on Sixth Avenue. He climbed up on a metal utility box and pulled some clothes off the top of the building across the alley from the apartments. He then threw several objects onto the roof of that building.

The following morning Winifred Duggan's body was found in the alley a short distance from the apartments. The body was naked except for a bra, which had been pushed up exposing her breasts, and a pair of sandals. Winifred Duggan had several head wounds caused by blows from some blunt object. She bled to death as a result of those wounds. She also had a bruise at the back edge of her vagina that was consistent with penetration by a penis or finger. A foreign pubic hair that matched appellant's was found meshed with the victim's own pubic hair.

Police officers found some bloody clothes, two bloody beer bottles and a bloody white port wine bottle on the roof of the building across from the apartments on Sixth Avenue. The bottles also had some white hair stuck to them, and some identifiable latent fingerprints on them. The blood and hair on the bottles matched the victim's and the prints matched appellant's. Appellant's fingerprint was also found on one of three bloody paper bags found near the body.

Appellant was arrested later that morning. He admitted having been with the victim the night before but denied killing her. He was charged with first degree premeditated murder and first degree felony murder alleging that he killed the victim while committing or attempting to commit robbery or sexual assault. At the close of the evidence at trial, the court directed a verdict of acquittal on the premeditated murder charge.

Appellant raises five issues on appeal: (1) whether the trial court erred in failing to instruct the jury on the crime of attempted sexual assault; (2) whether the prosecutor's closing argument was improper; (3) whether Arizona's death penalty statute is unconstitutional; (4) whether the death penalty was properly imposed in this case; and (5) whether the revocation of probation and sentence for aggravated assault was proper.

### Failure to Instruct on Attempted Sexual Assault

At appellant's trial the jury was instructed as follows:

"The crime of first degree murder requires proof of the following two things: One, the defendant committed or attempted to commit sexual assault, and, two, in the course of and in furtherance of the crime or immediate flight from the crime, the defendant caused the death of Winifred Duggan.

"The crime of sexual assault requires proof of the following two things: One, the defendant intentionally or knowingly penetrated the vulva of Winifred Duggan with a part of his body without Winifred Duggan's consent, and, two, Winifred Duggan was not legally married to the defendant."

These instructions and the order in which they were given conformed perfectly with Recommended Arizona Jury Instructions.

*See* RAJI 11.052 & nn. 1–2; RAJI 14.06. Appellant did not request an instruction defining attempted sexual assault and none was given. Furthermore, appellant did not object to the instructions as given. He now claims that the trial court's failure to instruct the jury on the offense of attempted sexual assault was error requiring reversal.

■ The United States Supreme Court has stated, "[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203, 212 (1977). If a defendant does not object to a trial court's failure to give an instruction then the defendant may not claim error on appeal unless the failure to instruct rises to the level of fundamental error. *State v. Mincey,* 130 Ariz. 389, 636 P.2d 637 (1981), *cert. denied,* 455 U.S. 1003, 102 S.Ct. 1638, 71 L.Ed.2d 871 (1982); *State v. Dippre,* 121 Ariz. 596, 592 P.2d 1252 (1979); Ariz.R.Crim.P. 21.3(c). Error is fundamental only if it "goes to the foundation of the case, or * * * takes from a defendant a right essential to his defense." *State v. Mincey,* 130 Ariz. at 397, 636 P.2d at 645 (quoting *State v. Pulliam,* 87 Ariz. 216, 222, 349 P.2d 781, 785 (1960)).

In the instant case appellant was accused of first degree murder in violation of A.R.S. § 13–1105(A)(2). Section 13–1105(A)(2) provides that one commits first degree murder if one "commits or attempts to commit sexual assault," or other enumerated felonies, and a death is caused.[1] The substance of appellant's argument is that the word "attempts" in § 13–1105(A)(2) means "commits attempt" as defined in A.R.S. § 13–1001. Because the jury was not instructed on § 13–1001 attempt, the argument continues, it was unable to properly determine whether appellant killed the victim while attempting to commit sexual assault. Furthermore, because of the form of the verdict in this case it is not clear whether the jury found a completed sexual assault or

merely an attempt. Consequently, appellant concludes, it is possible that the jury found that appellant killed the victim while attempting to commit sexual assault based on an inaccurate understanding of the word "attempt."

■ It is not immediately apparent from the language of § 13–1105(A)(2) whether the word "attempts" is being used in its ordinary sense or in its § 13–1001 sense. For purposes of the instant case we need not decide. Assuming without deciding that "attempts" is used in its § 13–1001 sense, the failure to instruct on attempt in the instant case was not fundamental error. This is because the ordinary definition of "attempt" and the § 13–1001 definition of "attempt," as applied to this case, are essentially the same. A common definition of attempt is "to make an effort to do, accomplish" something. Webster's Third International Dictionary 140 (1976); *see State v. Wilson,* 120 Ariz. 72, 74, 584 P.2d 53, 55 (App.1978) ("the word 'attempt' means to try; it implies an effort to bring about a desired result"). Under A.R.S. § 13–1001 "attempt" means to do any act toward the commission of a particular crime coupled with the intent to complete the crime. *State v. Dale,* 121 Ariz. 433, 590 P.2d 1379 (1979). It is difficult to see how something could be an attempt under one definition and not the other. Consequently, this case did not involve "error going to the foundation of the case" nor was appellant "denied a right essential to his defense" by virtue of the fact that the jury was working with the ordinary definition of "attempt" rather than the § 13–1001 definition. There is no danger that the jury found that appellant killed the victim while attempting sexual assault based on an inaccurate definition of the word "attempt." *See State v. King,* 110 Ariz. 36, 514 P.2d 1032 (1973); *State v. McAlvain,* 104 Ariz. 445, 454 P.2d 987 (1969); *People v. Nelson,* 73 Ill.App.3d 593, 29 Ill.Dec. 905, 392 N.E.2d 602 (1979); *Peo-*

1. The indictment also accused appellant of premeditated murder and of killing the victim while committing or attempting to commit robbery. The trial judge directed a verdict of acquittal on the charge of premeditated murder and did not submit robbery-felony murder to the jury.

ple v. Thomas, 49 Ill.App.3d 961, 7 Ill.Dec. 480, 364 N.E.2d 641 (1977); People v. Miner, 46 Ill.App.3d 273, 4 Ill.Dec. 766, 360 N.E.2d 1141 (1977); cf. Rizzuto v. State, 407 A.2d 225 (Del.1979) (failure to define "sexual contact," which is specifically defined by statute, is not error because it has common meaning that is tracked in the statute).

■ Even if the trial court's failure to define attempt had been fundamental error it would have been harmless in the instant case. Error is harmless if there is no reasonable probability under the facts of the case that the verdict might have been different had the error not been committed. State v. Malloy, 131 Ariz. 125, 639 P.2d 315 (1982). There can be no serious doubt that the victim in the instant case was killed in the course of a sexual assault or an attempted sexual assault.[2] The evidence showed that the victim's body was found naked except for her bra, which had been pushed up exposing her breasts, and her sandals. There was a foreign pubic hair meshed with the victims as if the attacker's pubic area had been mounted on top of the victim's. Moreover, there was a bruise on the back edge of the victim's vagina. Testimony established that the bruise was caused within minutes of the fatal head injuries and that it was consistent with penetration by a penis or finger. This uncontroverted evidence, at the very least, established that the victim was killed in the course of an attempted sexual assault, and indicated quite strongly that she was killed in the course of a completed sexual assault. It appears from the record that the only seriously contested issue in this case was not whether the victim was killed in the course of an attempted or completed sexual assault, but whether appellant was the person who killed her. There is no reasonable probability that the giving of an attempt instruction would have caused the jury to

find that the victim was not killed in the course of an attempted or completed sexual assault and thereby acquit appellant. See State v. McAlvain, supra; People v. Welch, 8 Cal.3d 106, 104 Cal.Rptr. 217, 501 P.2d 225 (1972); cf. Rizzuto v. State, supra (failure to define "sexual contact," which is specifically defined by statute, did not prejudice defendant because it has an ordinary meaning that is tracked by the statute); People v. McGhee, 67 Mich.App. 12, 239 N.W.2d 741 (1976) (failure to instruct on underlying felony is not error where there is no doubt that killing occurred in course of felony); People v. Jones, 66 Mich.App. 223, 238 N.W.2d 813 (1975) (failure to instruct on underlying felony is not error where there is no doubt that killing occurred in course of felony).

### Prosecutor's Closing Argument

In his rebuttal closing argument the prosecutor stated:

"Now, the defense attorney told you that the victim did not deserve to die, and referred to it as a tragic occurrence, but it was more than that. It was a brutal and senseless killing in which the defendant smashed in the head of a 78-year old lady and left her to bleed to death, as the doctor told you, in the alley. That's first degree murder from an emotional point of view and a logical point of view."

Appellant did not object to this statement at his trial but argues on appeal that it was reversible error.

■ Appellant's failure to object during the closing argument constitutes a waiver of any right to review on appeal unless the prosecutor's statement amounts to fundamental error. State v. Mincey, supra; State v. Marvin, 124 Ariz. 555, 606 P.2d 406 (1980). We find that the statement objected to by appellant in the instant case was not improper and certainly not fundamental error.

2. A person commits sexual assault by knowingly or intentionally engaging in sexual intercourse with any person not his or her spouse without that person's consent. A.R.S. § 13-1406. "Sexual intercourse" is defined as "penetration into the penis, vulva or anus by any part of the body or by any object or manual

masturbatory contact with the penis or vulva." A.R.S. § 13-1401(3). A person commits attempted sexual assault by doing any act that is a step toward committing a sexual assault with the intent to complete the offense. See State v. Wallen, 114 Ariz. 355, 560 P.2d 1262 (App. 1977).

■ Wide latitude is given in closing arguments and counsel may comment on the evidence and argue all reasonable inferences therefrom. *State v. Mincey, supra; State v. Blazak,* 114 Ariz. 199, 560 P.2d 54 (1977) (quoting *State v. Gonzales,* 105 Ariz. 434, 466 P.2d 388 (1970)). Counsel may not, however, comment on matters which were not introduced in evidence. *State v. Smith,* 114 Ariz. 415, 561 P.2d 739 (1977). The prosecutor's statement in this case involved nothing more than the circumstances of the killing, all of which were in evidence. It did not call matters to the attention of the jury that the jury could not properly consider. Moreover, while it may be argued that the statement had emotional overtones, some amount of emotion in closing argument is not only permissible, it is to be expected. *State v. Marvin, supra; State v. Blazak, supra; State v. Smith, supra; State v. Freeman,* 114 Ariz. 32, 559 P.2d 152 (1976); *State v. Nelson,* 131 Ariz. 150, 639 P.2d 340 (App.1981).

## Constitutionality of Arizona's Death Penalty Statute

■ Appellant claims that A.R.S. § 13–703(F)(6), which allows the trial court to consider whether a murder was committed in an "especially heinous, cruel, or depraved manner" as an aggravating circumstance, is unconstitutionally vague. In *State v. Gretzler,* 135 Ariz. 42, 659 P.2d 1 (1983), and *State v. Ortiz,* 131 Ariz. 195, 639 P.2d 1020 (1981), we considered this argument and rejected it.

■ Appellant also claims that A.R.S. § 13–703 is unconstitutional because it does not allow the sentencing judge to consider the defendant's mens rea at the time of the crime as a mitigating circumstance in sentencing. This claim is without merit.

As the United States Supreme Court made clear in *Bell v. Ohio,* 438 U.S. 637, 98 S.Ct. 2977, 57 L.Ed.2d 1010 (1978), and *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and as this court made clear in *State v. Watson,* 120 Ariz. 441, 586 P.2d 1253, *cert. denied,* 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1978), a death penalty statute may not preclude the sentencer from considering, as mitigating circumstances, any aspects of a defendant's character or record and any circumstances of the offense relevant in determining whether a sentence less severe than death is appropriate. A.R.S. § 13–703 is entirely consistent with this requirement. Section 13–703(G) provides:

"Mitigating circumstances shall be any factors proffered by the defendant or the state which are relevant in determining whether to impose a sentence less than death, including any aspect of the defendant's character, propensities or record and any of the circumstances of the offense * * * ."

The language of this provision clearly allows the defense or the prosecution to offer and the sentencing judge to consider any mitigating circumstance relevant to the sentencing decision. This includes the defendant's mens rea. Furthermore, it is clear from the record that at the sentencing hearing appellant raised and the sentencing judge considered the question of appellant's mens rea at the time of the crime. A.R.S. § 13–703(G) is not unconstitutional.

## Imposition of the Death Penalty in the Instant Case

Appellant claims that the death penalty should not have been imposed in this case. We review every death penalty imposed in the State of Arizona to insure that it is applied with consistency and not in an arbitrary or capricious manner. Our duty is not simply to determine whether the trial court's finding is supported by sufficient evidence. Rather, we must make a separate and independent determination as to whether, based on the record before us, the death penalty should be imposed. *State v. Schad,* 129 Ariz. 557, 633 P.2d 366 (1981), *cert. denied,* 455 U.S. 983, 102 S.Ct. 1492, 71 L.Ed.2d 693 (1982); *State v. Watson,* 129 Ariz. 60, 628 P.2d 943 (1981).

The death penalty is reserved for first degree murders in which either the circumstances of the killing are so shocking that it

stands out above the norm of first degree murders, or the background of the murderer sets him apart from the usual first degree murderer. *State v. Blazak*, 131 Ariz. 598, 643 P.2d 694 (1982); *State v. Watson*, *supra*. This notion is embodied in Arizona's death penalty statute, A.R.S. § 13–703. Under § 13–703(E) if a case involves one or more of seven enumerated aggravating circumstances and no mitigating circumstances sufficiently substantial to call for leniency then the trial court is required to impose a sentence of death.

■ In the instant case the trial court found two aggravating circumstances and no mitigating circumstances. The court found, under § 13–703(F)(2), that appellant has previously been convicted of two other felonies involving the use or threat of violence on another person. We too find the existence of that aggravating circumstance. Appellant was convicted of assault with a deadly weapon in 1978, and aggravated assault in 1980. Both offenses involved the actual use of violence on another person.

The trial court also found under § 13–703(F)(6), that the killing was committed in an especially heinous or depraved manner. So do we.

A.R.S. § 13–703(F)(6) provides that the sentencing judge shall consider as an aggravating circumstance that "[t]he defendant committed the offense in an especially heinous, cruel, or depraved manner." In *State v. Knapp*, 114 Ariz. 531, 562 P.2d 704 (1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978), this Court defined the terms used in § 13–703(F)(6). We have applied these definitions consistently ever since *Knapp*. A murder is "heinous" if it is "hatefully or shockingly evil"; it is "cruel" if it is "disposed to inflict pain in a wanton, insensate or vindictive manner" or if "sadistic"; it is "depraved" if it is "marked by debasement, corruption, perversion or deterioration." *State v. Knapp*, 114 Ariz. at 543, 562 P.2d at 716. In further defining these terms we have held that "cruelty" involves the mental or physical pain inflicted on the victim, while "heinous" and "depraved" involve the mental state and atti-

tude of the killer as reflected in his or her words and actions. *State v. Poland*, 132 Ariz. 269, 645 P.2d 784 (1982); *State v. Bishop*, 127 Ariz. 531, 622 P.2d 478 (1981); *State v. Clark*, 126 Ariz. 428, 616 P.2d 888, *cert. denied*, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980); *State v. Ceja*, 126 Ariz. 35, 612 P.2d 491 (1980); *State v. Lujan*, 124 Ariz. 365, 604 P.2d 629 (1979). We recognize that all first degree murders are heinous, cruel, or depraved to a degree. In order to fall within § 13–703(F)(6), however, a murder must be *especially* heinous, cruel, or depraved. *State v. Ortiz, supra; State v. Lujan, supra*. There must be something about the murder that sets it apart from the norm of first degree murder. *State v. Lujan, supra; State v. Brookover*, 124 Ariz. 38, 601 P.2d 1322 (1979).

In the instant case the trial court found that the murder was not cruel. We agree. The deputy medical examiner who performed the autopsy on the victim testified that she bled to death from head injuries caused by blows from blunt objects. He could not, however, determine whether she was conscious at the time she received any of the blows. There was no evidence to indicate that the victim suffered great pain. Consequently, we cannot find that the killing was especially cruel. *State v. Ortiz, supra; State v. Ceja, supra; State v. Clark, supra*.

The trial court did find that the killing was especially heinous or depraved. We agree. The victim in this case was 78 years old. She had limited mental capabilities and was easily manipulated. She was helpless at the hands of appellant. He could have accomplished whatever criminal goals he desired without killing her. Furthermore, it is clear that appellant was aware of these facts. The way he treated her in the liquor store and while they were at the apartments on Sixth Avenue demonstrates this. We find that by sexually assaulting Winifred Duggan and senselessly killing her, knowing full well that by virtue of her advanced age and limited mental capabilities she was easy prey, appellant demonstrated a shockingly evil and corrupt state

of mind. Consequently, we find that the murder in the instant case was heinous and depraved within the meaning of A.R.S. § 13–703(F)(6). *See State v. Woratzeck,* 134 Ariz. 452, 657 P.2d 865 (1982) (Gordon, V.C.J., concurring in part and dissenting in part); *State v. Tison,* 129 Ariz. 526, 633 P.2d 335 (1981); *cf. Quince v. State,* 414 So.2d 185, 187 (Fla.1982) ("beating, wounding, raping, and manual strangulation of an eighty-two year old, frail woman easily qualified as heinous"). We find therefore that there are two aggravating circumstances present in this case. Appellant has previously been convicted of two felonies involving threats or violence on another, and he committed the murder in the instant case in a heinous and depraved manner.

▆ We now address the question of mitigating circumstances. Under A.R.S. § 13–703(G) any factor relevant in determining whether to impose a sentence less than death is a mitigating circumstance. If a defendant introduces uncontroverted credible evidence tending to prove a mitigating circumstance then the mitigating circumstance exists. Once the existence of one or more mitigating circumstances is established, the court must determine whether they are sufficiently substantial to call for leniency.

▆ Appellant argues, as he did in the trial court, that there are several mitigating circumstances present in the instant case. First, appellant argues that the giving of a felony murder instruction is a mitigating circumstance. We have held that the giving of a felony murder instruction may be considered as a mitigating circumstance. *State v. Schad, supra.* In order to be a mitigating circumstance, however, it must somehow be relevant in determining whether the death penalty should be imposed. The fact that a case goes to the jury on a felony murder theory rather than a premeditated murder theory is not relevant to that determination in a case where the defendant intended to kill the victim or where the defendant knew with substantial certainty that his conduct would cause death. *See*

*State v. Schad, supra; State v. Jordan,* 126 Ariz. 283, 614 P.2d 825 (1980).

▆ Turning to the case at issue, the evidence establishes that appellant repeatedly hit the victim on the head and left her bleeding in the alley. There is no evidence that appellant did not intend to kill the victim. It is reasonable to conclude, in the absence of any evidence to the contrary, that one who beats a 78 year old woman on the head and leaves her bleeding in an alley intends to kill or knows with substantial certainty that his action will cause death. *See State v. Schad, supra; State v. Jordan, supra.* Consequently, we find that the giving of the felony murder instruction was not relevant in determining whether appellant should receive a death sentence and therefore is not a mitigating circumstance.

Appellant also argues that the trial court found that he did not intend to kill the victim and that that is a mitigating circumstance. Appellant bases this argument solely on the fact that the trial judge directed a verdict of acquittal on the charge of premeditated first degree murder. Appellant's argument is without merit. It is clear from the record that the trial court directed a verdict of acquittal on the premeditated murder charge only because the state failed to prove premeditation. The court did not find that appellant did not intend to kill the victim. Appellant has not established lack of intent as a mitigating circumstance.

▆ Next, appellant argues that he was an alcoholic and "probably intoxicated" at the time of the killing and that that is a mitigating circumstance. A defendant's intoxication or alcoholism at the time of the offense is a mitigating circumstance if the evidence shows that it significantly impaired the defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law. *State v. Britson,* 130 Ariz. 380, 636 P.2d 628 (1981); *State v. Jordan, supra; see State v. Smith,* 125 Ariz. 412, 610 P.2d 46 (1980). The evidence offered by appellant in the instant case falls far short of this showing.

The evidence shows that appellant bought a pint of white port wine and a can of beer at about 8:30 or 8:45 the evening of the killing, that appellant and the victim were seen drinking beer some time between 9:00 and 10:00 that evening, and that the victim's blood alcohol level was .02. At best, this evidence suggests that on the evening of the killing appellant drank the better part of a pint of wine and a can of beer. It does not begin to establish that appellant was intoxicated or that his capacity to appreciate the wrongfulness of his conduct was impaired. Furthermore, there is evidence to suggest that appellant's capacity was not impaired. On the night of the murder a witness saw appellant climb up on a utility box and use a rake to pull some clothing off of a nearby roof. The witness then saw appellant throw what turned out to be two bloody beer bottles and a bloody wine bottle onto the roof. The fact that appellant tried to dispose of evidence or instrumentalities of the crime suggests that he did appreciate the wrongfulness of his conduct.

We have reviewed the remaining factors appellant relies on and we find that they are not mitigating circumstances. After conducting our independent examination of the record we find the existence of two aggravating circumstances, no mitigating circumstances, and certainly no mitigating circumstance sufficiently substantial to call for leniency. Furthermore, we have reviewed prior cases and find that a sentence of death in this case is not excessive or disproportionate to penalties imposed in other cases in which defendants with histories of violent criminal behavior have been convicted of first degree felony murder. *See State v. Greenwalt,* 128 Ariz. 150, 624 P.2d 828 (1981); *State v. Steelman,* 126 Ariz. 19, 612 P.2d 475 (1980); *State v. Jordan, supra; State v. Arnett,* 125 Ariz. 201, 608 P.2d 778 (1980); *State v. Evans,* 124 Ariz. 526, 606 P.2d 16 (1980). Consequently, we find the death penalty appropriate in this case.

### Probation Revocation

Appellant claims that because his conviction should be reversed the order re-voking his probation and imposing sentence in connection with his prior aggravated assault conviction should be vacated. Because we affirm appellant's conviction we also affirm the trial court's revocation of probation and sentence.

We have examined the record for fundamental error and find none.

The judgment of conviction and sentence for first degree murder is affirmed. The revocation of probation and sentence for aggravated assault is affirmed.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.