*In re* ANTHONY RAY ARMOUR, Respondent—(THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *v.* ANTHONY RAY ARMOUR, Appellant.)

(Nos. 57861, 57862 cons.;

First District (4th Division)—October 17, 1973.

530

Paul Bradley, Deputy Defender, of Chicago, (Kenneth L. Jones and Barry Rand Elden, Assistant Appellate Defenders, of counsel,) for appellant.

Bernard Carey, State's Attorney, of Chicago, (James S. Veldman, Roger Horwitz, and Daniel Murray, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE ADESKO delivered the opinion of the court:

This appeal arises from an adjudication of delinquency which was based upon two delinquency petitions charging the respondent with attempted robbery and murder. Two petitions were filed against the respondent on July 3, 1971, and on the same day respondent was brought before the juvenile court for a detention hearing. The court ordered the detention hearing continued to July 9, 1971. On July 9, 1971, the court ordered the respondent released from custody and set the petitions for an adjudicatory hearing on August 4, 1971. This was 32 days from the date the delinquency petitions were filed. On August 4, 1971, the juvenile court granted respondent's motion for a continuance to September 16, 1971. Subsequent to September 16, 1971, there was a series of continuances and the adjudicatory hearing was not actually commenced until February 29, 1972. There was a total of 16 continuances in this juvenile proceeding. Some of the continuances were the result of the court's own orders, some were granted by agreement, some on motions of the State and some at the request of the respondent's counsel.

At the adjudicatory hearing, Charles Carter, age 14, testified for the State that on June 15, 1971, at about 8:30 P.M. he was playing baseball in a parking lot on 56th Street between Indiana and Michigan avenues. There were no lights in the parking lot, but Carter stated he was able to see the ball during the game. At this time Carter observed a man running through an alley toward 56th Street, with three boys pursuing him. The man exited the alley and stopped on 56th Street, across the street from Carter. The witness testified that two of the pursuing boys stopped at the mouth of the alley where it intersects 56th Street. The third boy turned east, away from the man, and stopped on the grass located at the southeast corner of the intersection of the alley and 56th Street. Carter identified this boy on the grass as the respondent, Anthony Ray Armour, and stated that he had seen the respondent playing in the area ten or fifteen times prior to June 15, 1971.

When the man had stopped on 56th Street, Carter walked over to the front of his house which was located adjacent to the parking lot and across the street from where the man was standing. The distance was approximately 30 to 40 feet. Carter testified that he heard the man say he did not have any money and then one of the boys standing in the alley took out a gun and handed it to the other boy in the alley who then shot and killed the victim. The respondent did not handle the gun. After the shooting, the three boys ran away in the same direction.

The respondent testified that on June 15, 1971, he was in a playground on 56th Street at 8:00 P.M. About 8:30 P.M., as was his custom, he went next door to his aunt's house and remained there for approximately 30

minutes fixing his bicycle. The respondent stated that he saw the police driving on 56th Street and left his aunt's house to see what happened. The respondent's brother who was at the scene told him a man had been shot and the respondent then went directly home.

The respondent's aunt and uncle testified as alibi witnesses. The uncle testified that the respondent usually left his bike in his hallway and would return to get it between 8:30 and 9:00 P.M. The witness stated: "He was at the house working on the bike or at least I thought he was working on the bike in the hallway and he left there between 8:30 and 9:00 P.M." On cross-examination the uncle testified that the respondent left between 8:00 and 8:30 P.M. The aunt testified that the respondent came to her house at 8:30 P.M. and fixed his bicycle. She said she knew it was 8:30 P.M., because she looked at her watch. The aunt stated the respondent left about 9:00 P.M.

At the conclusion of the adjudicatory hearing, the juvenile court found the respondent delinquent on the charges of attempted robbery and murder. The respondent who was seventeen at the time of the adjudicatory hearing was commited to the Department of Corrections, Juvenile Division, until he attains the age of twenty-one.

The first issue raised by the respondent-appellant in this appeal is that the juvenile court lost its jurisdiction over the appellant by its failure to comply with section 704—2 of the Juvenile Court Act (Ill. Rev. Stat. 1971, ch. 37, par. 701—1 et seq.). This section states that: "When a petition has been filed, it shall be set for an adjudicatory hearing within 30 days." Appellant contends that the language of section 704—2 is mandatory and therefore since the adjudicatory hearing was held 32 days after the petitions were filed the juvenile court acted without jurisdiction in finding the appellant delinquent. The resolution of this issue requires a construction of the first sentence of section 704—2 and presents, as far as can be ascertained, a case of first impression in Illinois. In its brief the petitioner-appellee cited the case of *In re Interest of Nyce*, 131 Ill.App.2d 481, as being dispositive of the jurisdictional issue. The court in its opinion stated, at page 486:

> "Similarly, we do not find the allegations with respect to the failure to comply with sections 703—5 and 704—2 of the Act, though they are factually supported by the record, to bear upon the question of jurisdiction."

However, the *Nyce* case was predicated upon a neglect petition and was not a proceeding to determine the delinquency of a minor. The court recognized the difference when it stated at page 486, "\* \* \* This is not that type of juvenile proceeding which is likely to have an outcome substantially similar to a criminal proceeding, *i.e.*, confinement for a

term of years." The instant appeal, however, does present a juvenile proceeding which did result in confinement for a term of years and therefore requires a careful scrutiny of the purpose and nature of the Juvenile Court Act and the language of section 704—2. For the reasons hereinafter stated, this court is of the opinion that the language of section 704—2 of the Juvenile Court Act is not mandatory but rather directory and thus the court below did not act without jurisdiction when it held the adjudicatory hearing 32 days after the delinquency petitions were filed.

■■ As previously stated, the jurisdictional issue raised by the appellant in this appeal requires a construction of the first sentence of section 704—2 of the Juvenile Court Act. The standard to be applied in construing legislation was stated in *People v. Gibbs*, 413 Ill. 154, at 163:

> "Courts will construe the details of an act in conformity with its dominating general purpose, will read text in light of context, and will interpret the text so far as the meaning of the words fairly permits so as to carry out in particular cases the generally expressed legislative policy. (*Securities and Exchange Com. v. Joiner Leasing Corp.*, 320 U.S. 350.) The object of the legislature must be ascertained from a consideration of the entire act. (*Blattner v. Dietz*, 311 Ill. 445.)"

The Illinois Supreme Court has also stated in *Corrigan v. Illinois Liquor Control Com.*, 19 Ill.2d 230, at 233:

> "In determining the intent of the legislature consideration must be given to the entire statute, its nature, objects and the consequences which would result from construing it one way or another."

It is therefore imperative to ascertain the salient purpose of the Juvenile Court Act and construe the language of section 704—2 in a manner which will promote and facilitate the intentions of our legislature.

■■ The Illinois General Assembly has expressly declared its intentions in section 701—2 of the Act. The first subsection states that: "The purpose of this Act is to secure for each minor subject hereto such care and guidance, preferably in his own home, as will serve the moral, emotional, mental and physical welfare of the minor and the best interests of the community;   *   *   *" The second subsection provides that the court may proceed promptly and that the Act should be utilized in a spirit of humane concern. The final subsection states: "This Act shall be liberally construed to carry out the foregoing purpose and policy." Illinois was the front runner of the reform movement at the turn of the century which led to the enactment of numerous juvenile court acts. In considering the validity of the Juvenile Court Act of 1899, the first

one to be adopted by any State, our Supreme Court stated:

> "The purpose of this statute is to extend a protecting hand to unfortunate boys and girls who, by reason of their own conduct, evil tendencies or improper environment, have proven that the best interests of society, the welfare of the State and their own good demand that the guardianship of the State be substituted for that of natural parents." *Lindsay v. Lindsay*, 257 Ill. 328, at 340.

It is therefore readily apparent that the salient purpose and nature of the Illinois Juvenile Court Act is remedial and preventive as opposed to punitive. The dominant concept of the Act is to provide a means for those youths who through their own volition or due to the lack of proper supervision have strayed from socially acceptable norms of behavior. The best interests of the minor must predominate but the interest of society in being protected from antisocial behavior must also be considered. (*People ex rel. Hanrahan v. Felt*, 48 Ill.2d 171.) In construing the language of section 704—2 all of these factors must be considered.

The appellant contends that the language of section 704—2 is mandatory and that since a juvenile proceeding is a special statutory proceeding a strict compliance with this statute is necessary. However, the appellant did concede in his brief that not every provision of the Juvenile Court Act is mandatory and jurisdictional. The section uses the word "shall" and we must determine whether it was the intention of the legislature to mean "must" or "may". In *Cooper v. Henricks*, 10 Ill.2d 269, the Court in construing section 4—2 of the Adoption Act (Ill. Rev. Stat. 1953, ch. 4, par. 4—2) stated at 272:

> "The terms of the statute do not themselves indicate unequivocally whether the statute is mandatory or discretionary in character. The word 'shall' appearing therein does not have an exclusive, fixed or inviolate connotation, and has been construed as meaning both 'must' and 'may' depending upon the legislative intent. [Citations.]"

In the case of *People v. Potts*, 403 Ill. 398, at 401, the court said:

> "A statute specifying the time within which a public officer is to perform an official act regarding the rights and duties of others will be regarded as directory, merely, unless the nature of the act to be performed or the language used shows that the designation of the time was intended as a limitation on the power of the officer. (*People v. Donaldson*, 255 Ill. 19.)"

It was also stated in *Corrigan v. Illinois Liquor Control Com.*, 19 Ill.2d 230, at 233:

> "Ordinarily a statute which specifies the time for performance of

an official duty will be considered directory only where the rights of the parties cannot be injuriously affected by failure to act within the time indicated. However, where such statute contains negative words, denying the exercise of the power after the time named, or where a disregard of its provisions would injuriously affect public interests or private rights, it is not directory but mandatory [Citations.]"

■■ As in the *Cooper* case, the statute under consideration does not indicate whether it is mandatory or directory. However, it is our opinion that construing the word "shall" as merely directory is more in accord with the salient purpose of the Juvenile Court Act. The entire concept of rehabilitation and guidance would be thwarted if the juvenile division of the circuit court lost jurisdiction over a wayward youth by setting the adjudicatory hearing 32 days instead of 30 days as called for by the statute. It is the appellant's contention that section 704—2 is the speedy trial provision of the Act. This court agrees that a prompt determination of a minor's status is one of the purposes of the Act but we cannot agree that mere speed should outweight the predominate purpose of the Act—the welfare of the minor.

This court cannot perceive any rights which would be injuriously affected by a failure to act within the time indicated by section 704—2. On the contrary the interests of the minor are better protected if an adjudicatory hearing is held 32 days after the petition is filed than not at all. The community's interest in being protected from antisocial behavior is also promoted by reading the language of section 704—2 as directory rather than mandatory. While it is the intention of the Juvenile Court Act to provide a means whereby a minor who has run afoul of the law can be returned to the community as a productive citizen, the rest of society must be protected from behavior such as the appellant was found guilty. These dual interests are better served if an adjudicatory hearing is held two days late than by releasing the minor completely.

■■■ The threat of the loss of liberty should not indefinitely hang over a minor's head, but the objectives of the Juvenile Court Act are understanding, guidance and protection and these objectives should not be lost to mere speed. It is the opinion of this court that the language of the first sentence of section 704—2 of the Juvenile Court Act was intended as a direction and a guide to the juvenile division of the Circuit Court in order to secure and promote the purposes of the Act. The Act was intended to aid and protect the juvenile and society and to do so in as expeditious a manner as possible. Viewing the language of section 704—2 as directory rather than mandatory is more consistent with a

sound administration of the Act and in furtherance of its salient purpose. Therefore, section 704—2 is not mandatory and jurisdictional and the court was not without jurisdiction to adjudicate the appellant delinquent.

The appellant cites the cases of *In re Dependency of Bartha*, 87 Ill. App.2d 263; *Zook v. Spannaus*, 34 Ill.2d 612 and *People ex rel. Houghland v. Leonard*, 415 Ill. 135, which dealt with the findings and notice provisions of the Juvenile Court Act and held them to be jurisdictional. However, those cases and provisions can be distinguished from section 704—2. In the cases of *Bartha* and *Zook* it was held that the court was without jurisdiction to enter an order without making the findings as required by the Act. It is readily apparent that such findings are necessary to protect the right to appeal and to fully appraise the reviewing court of the premises upon which the lower court rendered its decision. The *Houghland* case dealt with the notice of provision of the Act and held it to be jurisdictional. There is an essential difference between the notice provision of the Act and the time limitation of section 704—2. As stated in *People ex rel. McEntee v. Lynch*, 223 Ill. 346, at 348:

> "The home is the basis of our present civilization. The relations of parent and child are so important and sacred that they should not be interfered with or destroyed unless absolutely essential to the well being of society, and then only when the public authorities have been satisfied as to the necessity of such action after a full investigation *and due notice to all interested parties.*" (Emphasis added.)

The determination that the notice provision is jurisdictional is consistent with section 701—20 of the Act which provides that the minor and his parents, etc., have a right to be present and heard. The parents are expected to participate in some meaningful way and a jurisdictional construction of the notice provision is in furtherance of the salient purpose of the Act. Likewise, this court's interpretation of section 704—2 is consistent with doing what is best for the minor.

■■■ The appellant also contends that the State failed to prove beyond a reasonable doubt his guilt for the offenses with which he was charged; the intent to commit robbery and his accountability for murder. We find no merit in these contentions. The appellant's argument as to the State's failure to prove his guilt beyond a reasonable doubt is predicated upon an attack of the credibility of the eyewitness, Carter, and his ability to perceive. Appellant contends that his testimony and that of his two alibi witnesses should have been believed. As the court stated in *People v. Scott*, 6 Ill.App.3d 281, at 284:

> "An important function of a trial judge is to determine the credibility of the witnesses and the weight to be accorded their testi-

mony. These findings will not be disturbed unless they are so improbable or unsatisfactory as to leave a reasonable doubt as to the defendant's guilt. (*People v. Catlett,* 48 Ill.2d 56, 268 N.E.2d 378.)"

In addition the language of our Supreme Court in *People v. Watkins,* 46 Ill.2d 273, at 280 to 281 is dispositive of the appellant's contention:

"The weight to be given the testimony of the alibi witnesses and inferences to be drawn therefrom are matters to be decided by the trial judge in a case where a jury has been waived. (*People v. Renallo,* 410 Ill. 472; *People v. Viti,* 408 Ill. 206.) It is fundamental that a reviewing court will not disturb a verdict of guilty on the ground that the evidence is insufficient unless it is so palpably contrary to the verdict or so unreasonable as to raise a reasonable doubt of the defendant's guilt. (*People v. Hoffman,* 45 Ill.2d 221; *People v. Mack,* 25 Ill.2d 416.) A trial court is in a more advantageous position to observe the demeanor of the witnesses, evaluate their testimony, and determine questions of truthfulness than a court of review. It is also undisputed in Illinois that where the identification of the accused is at issue the testimony of one witness is sufficient to convict, even though such testimony is contradicted by the accused, provided the witness is credible and he viewed the accused under such circumstances as would permit a positive identification to be made. (*People v. Brinkley,* 33 Ill.2d 403; *People v. Washington,* 26 Ill.2d 207; *People v. Mack,* 25 Ill.2d 416; *People v. Cox,* 22 Ill.2d 534.)"

In the case at bar, Carter made his identification of the appellant when it was still reasonably light out and he did testify he had seen the appellant ten to fifteen times prior to June 15, 1971. The trial court chose to believe Carter and not the appellant's witnesses. We cannot say that the trial court's findings are so unreasonable as to raise a reasonable doubt of the appellant's guilt. "* * * There is no obligation on a trial court to believe alibi testimony over positive identification of an accused, even though the alibi testimony may be given by a greater number of witnesses. (*People v. Setzke,* 22 Ill.2d 582.)" *People v. Catlett,* 48 Ill.2d 56, at 64.

 The appellant also contends that the only evidence of intent to commit robbery was Carter's testimony that the victim stated prior to the shooting that he had no money and this was insufficient to prove the intent beyond a reasonable doubt. The appellant was charged with attempted robbery and "A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense." (Ill. Rev. Stat. 1967,

ch. 38, par. 8—4(a).) As stated in *People v. Perry,* 23 Ill.2d 147, at 154: "Although intent is a matter of fact and cannot be implied as a matter of law, criminal intent may be shown by circumstantial evidence. (*People v. Weiss,* 367 Ill. 580; *People v. Martishu,* 361 Ill. 178.)" "Intent must ordinarily be proved circumstantially by inferences drawn from conduct appraised in its factual environment." (*People v. Johnson,* 28 Ill.2d 441, at 443.) The appellant was identified as one of the boys pursuing the victim and this in addition to Carter's testimony as to what the victim stated support the inference of intent to commit robbery. There were no circumstances to rebut this inference and thus we cannot say the State failed to prove the intent to commit robbery beyond a reasonable doubt.

▇▇▇ The appellant argues that what the boys failed to do is more persuasive than what they did. The boys made no demand for money nor after the shooting did they proceed to rob the victim. It has been held that a demand for money is not essential to show an intent to rob. (*People v. Leahy,* 295 Ill. 588; *People v. Murff,* 29 Ill.2d 303.) The appellant was charged with attempted robbery and a failure to proceed with the robbery is of no consequence. As the court stated in *People v. Olson,* 3 Ill.App.3d 240, at 243: "His subsequent rejection of the money and sudden departure, for whatever reasons, did not negate the circumstances from which the trier of fact could have drawn the element of intent."

▇▇▇ The appellant's final contention is that his accountability for the murder was not proved beyond a reasonable doubt. "A person is legally accountable for the conduct of another when: Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." (Ill. Rev. Stat. 1961, ch. 38, par. 5—2(c).) Appellant's argument is that since the State failed to associate him with the murder weapon his accountability was not proved beyond a reasonable doubt. We do not agree.

> "While mere presence or negative acquiescence is not sufficient to constitute a person a principal to a crime, one may aid and abet without actively participating in the overt act, and if the proof shows he was present at the crime without disapproving or approving it, the trier of fact may competently consider this conduct in connection with other circumstances and thereby reach a conclusion that such person assented to the commission of the criminal act, lent his countenance and approval and was thereby aiding and abetting the crime. (*People v. Washington,* 26

Ill.2d 207; *People v. Thicksten,* 14 Ill.2d 132.)" *People v. Clark,* 30 Ill.2d 67, at 72.

■■■■ It is well settled that words of agreement are not necessary to show a common purpose. The circumstances surrounding an act committed by a group can be evidence of a common design. (*People v. Richardson,* 32 Ill.2d 472.) The evidence adduced at the adjudicatory hearing placed the appellant at the scene of the murder and involved him in the attempted robbery. There was no evidence that the appellant disapproved of the shooting or in any manner sought to prevent it.

> "Evidence that a defendant voluntarily attached himself to a group bent on illegal acts with knowledge of its design supports an inference that he shared the common purpose and will sustain his conviction as a principal for a crime committed by another in furtherance of the venture. *People v. Tarver,* 381 Ill. 411; *People v. Rudecki,* 309 Ill. 125." *People v. Rybka,* 16 Ill.2d 394, at 405.

The State proved the appellant's accountability for murder beyond a reasonable doubt.

For the reasons herein stated, the decision of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

DIERINGER and JOHNSON, JJ., concur.