*In re* B. L., a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* B. L., Respondent-Appellant.)

Third District    No. 80-213

Opinion filed December 16, 1980.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

Thomas J. Homer, State's Attorney, of Lewistown (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from juvenile proceedings conducted in the Circuit Court of Fulton County, Judge Francis P. Murphy presiding. The minor, B. L., was charged in a two-count petition to adjudicate him a delinquent minor and a ward of the court with the unlawful delivery of a controlled substance, phencyclidine. After being adjudged a delinquent, B. L. was committed to the Juvenile Division of the Illinois Department of Corrections following a dispositional hearing.

On appeal, he raises the following issues: (1) whether the six-month delay from the alleged drug transactions to the filing of the instant petition violated the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, par. 701—1 *et seq.*); and, (2) whether the dispositional order placing B. L. in the Department of Corrections was supported by the manifest weight of the evidence. He does not dispute the findings of the adjudicatory hearing.

In February of 1978, B. L. was found to have committed the offense of burglary and was placed under supervision. Before the period of supervision expired, B. L. was charged with two more counts of burglary. Those counts formed the basis of a 1979 petition to adjudge B. L. a minor in need of supervision and a ward of the court. Guardianship was given to his probation officer, Thomas Wallace, but the power to place B. L. was never exercised by Wallace because in November of 1979 the burglary charges were dismissed.

Then, on February 13, 1980, the State petitioned the court to adjudge B. L. a ward of the court and a delinquent minor. The basis for the petition was two unlawful deliveries of less than 300 grams of a substance containing phencyclidine (PCP) to an undercover-police officer on Sep-

tember 10, 1979. Because B. L. was not arrested on that date, he first learned of the petition on the date of filing, nearly six months from the date of the occurrence. A guardian ad litem was appointed on February 28, 1980, to represent B. L. The guardian moved to dismiss the petition alleging that the six-month delay prejudiced B. L. The court denied the motion to dismiss on March 25, 1980, and the petition was then heard. The court determined that on September 10, 1979, B. L. made two unlawful deliveries of PCP to Special Agent Samuel Walley in Canton, Illinois. Accordingly, the court adjudged B. L. a delinquent minor and a ward of the court.

On April 22, 1980, a dispositional hearing was held. B. L. was 16 years of age when he committed the two drug transactions and was 17 years of age when sentenced. He was not then enrolled in high school. According to the probation department report, B. L. admitted to participating in several burglaries and expressed no remorse for any of his criminal activities. In fact, his only regret was that he was caught. The report concluded that B. L. became more "hardened" during supervision and that commitment to the Department of Corrections would be the best alternative to effect his rehabilitation. His probation officer, Thomas Wallace, testified and recommended that the best interests of both B. L. and society would be served if he were committed to the Department of Corrections, Juvenile Division. He believed that, based on B. L.'s prior criminality, he could not conform to society's rules and thus he required some type of confinement. Secondly, Wallace testified that the State juvenile corrections system was superior to a private institution to rehabilitate B. L. The State offered specialized remedial education programs to treat his educational problems, superior psychological services, and facilities for family counseling. Finally, Wallace testified that, although the security classification decision was left to the Department of Corrections, B. L. would most likely be committed to the Hanna City minimum security special education facility.

The court also found that B. L. had not participated in any further criminal activity since the September 10, 1979, narcotics deal, he had cooperated fully with his probation officer, he had a commendable summer work record, and he had not exhibited any violent tendencies.

Following testimony and argument, the court determined that B. L.'s parents were unable to properly discipline him based on his past criminal behavior, rejected the more lenient Juvenile Court Act placement alternatives (Ill. Rev. Stat. 1979, ch. 37, par. 705—7), and committed him to the Juvenile Division, Department of Corrections (Ill. Rev. Stat. 1979, ch. 37, par. 705—10).

■■ B. L. first argues that the petition to adjudicate him a delinquent minor should have been dismissed because the six-month delay prejudiced

him and violated the policies of the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, par. 701—2(2)). In fact, following the September 10, 1979, narcotics deals, he was not placed under arrest or in any other way detained. Thus, he cannot properly allege any loss of personal freedom caused by delayed prosecution. Also, the State was justified in not petitioning the court immediately because in doing so it would have jeopardized its special agent who witnessed the narcotics sale. For upholding this justification in another context see *People v. Nichols* (1978), 60 Ill. App. 3d 919, 377 N.E.2d 815. While we refuse to allow this justification for pre-arrest delay to be raised as a shibboleth to permit the State to commence prosecutions at its own leisure, the minor has not demonstrated any affirmative acts in reliance on the State's delay constituting sufficient prejudice to outweigh the valid State concerns of protecting its agents.

He also argues that *In re Armour* (1973), 15 Ill. App. 3d 529, 305 N.E.2d 47, requires prompt and expeditious Juvenile Court Act dispositions. We find *Armour* inapplicable to the instant case. In *Armour* the minor protested the delay from the date of filing of the petition to its adjudication and disposition which, according to section 4—2 of the Juvenile Court Act, "shall be within 30 days." (Ill. Rev. Stat. 1979, ch. 37, par. 704—2.) The court held that the 30-day requirement was directory and not jurisdictional and said:

> "This court cannot perceive any rights which would be injuriously affected by a failure to act within the time indicated by sections 704—2. * * *
>
> The threat of the loss of liberty should not indefinitely hang over a minor's head, but the objectives of the Juvenile Court Act are understanding, guidance and protection and these objectives should not be lost to mere speed." *In re Armour* (1973), 15 Ill. App. 3d 529, 536, 305 N.E.2d 47, 51.

In the case at bar, the minor cannot demonstrate any prejudice to his welfare resulting from the pre-petition delay which outweighs "society's interests in being protected from anti-social behavior." (*In re Armour* (1973), 15 Ill. App. 3d 529, 536, 305 N.E.2d 47, 51.) Nor can he refer to any specific mandate of the Juvenile Court Act to support his argument. We cannot agree that the delay violates the policies of the Act.

■■ Secondly, B. L. argues that the court's dispositional order to commit him to the Department of Corrections is not supported by the manifest weight of the evidence. The various dispositional alternatives available to the court, where a minor is found to be delinquent, are listed in section 5—2 of the Act (Ill. Rev. Stat. 1979, ch. 37, par. 705—2(a)). One of those alternatives includes the commitment of a delinquent minor to the Department of Corrections, Juvenile Division, if the court finds that "(a)

his parents, guardian or legal custodian are unfit or unable for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor, or are unwilling to do so, and (b) the best interests of the minor and the public will not be served by placement under Section 5—7.", (Ill. Rev. Stat. 1979, ch. 37, par. 705—10.) Section 5—7 lists placement alternatives available to the court which are less severe than commitment to the Department of Corrections. These two section 5—10 findings are tested on review by the manifest weight of the evidence standard (*People v. Hackman* (1971), 1 Ill. App. 3d 1030, 275 N.E.2d 488). We will not disturb the trial court's disposition unless the minor affirmatively demonstrates that the court acted outside sound judicial discretion and, therefore, abused its discretion. *In re Hatfield* (1979), 72 Ill. App. 3d 249, 390 N.E.2d 453; *In re Wilson* (1976), 40 Ill. App. 3d 619, 352 N.E.2d 251.

In the case at bar, the court carefully weighed the evidence in deciding to commit B. L. to the Department of Corrections. B. L.'s criminal conduct while under supervision, his admission that he had no remorse in selling narcotics and his acknowledgment of the seriousness of his conduct provided an ample basis for the court to determine that his parents and probation officer were unable to discipline him. We find that the court did not err in its determination.

We also find sufficient evidence to support the court's determination that the less severe placement alternatives of section 5—7 would not serve the best interests of B. L. or the public and that his commitment to the Department of Corrections was proper. (Ill. Rev. Stat. 1979, ch. 37, par. 705—10(1)(a), (b).) The minor argues that our opinion in *In re Wealer* (1976), 42 Ill. App. 3d 479, 355 N.E.2d 187, stands for the proposition that the Juvenile Court Act evinces a general statutory reluctance to commit juvenile offenders to the Department of Corrections and, therefore, section 5—10 commitment should be the disposition of last resort. While we agreed that *Wealer* requires meaningful review of the disposition order, we note that *Wealer* was specifically limited to its "unusual circumstances."

In that case, the minor's first offense, a burglary of a local pharmacy to obtain drugs which she intended to subsequently sell, was made the basis for the minor's disposition to the Department of Corrections. We found that the court failed to consider the advantages of the minor's brother, a deputy sheriff, assisting the minor's blind father in supervising her on probation. In the instant case, B. L. was already under probation and supervision for several burglaries when he again deliberately broke the law by selling narcotics, a criminal offense where an adult can be sentenced from three to seven years. The court also considered the probation department's recommendation of the Department of Corrections in favor of private institutional alternatives. The court rightly

concluded that the Juvenile Division facilities were superior to those of the Youth Farm and that B. L.'s best interests would be served by his commitment to the Department of Corrections. In so doing, the court properly considered and rejected the less severe placement alternatives, one being guardianship by a probation officer which already failed to properly guide B. L.

We find for the foregoing reasons that the court demonstrated an active concern and involvement in the placement of the minor, and its decision was supported by the manifest weight of the evidence. Accordingly, we affirm the disposition of the Circuit Court of Fulton County.

Affirmed.

BARRY and SCOTT, JJ., concur.