*In re* A.J. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. A.J. *et al.*, Respondents-Appellants).

First District (2nd Division) Nos. 84—682, 84—1063, 84—1255, 84—1470 cons.

Opinion filed July 30, 1985.

James J. Doherty, Public Defender, of Chicago (Thomas N. Swital, Assistant Public Defender, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE STAMOS delivered the opinion of the court:

On September 22, 1981, the four minors involved in this matter allegedly beat up a 29-year-old retarded male possessing the I.Q. of a 10-year-old. On September 29, 1981, the four youths were apprehended, taken to the police station and separately questioned. All of the youths admitted involvement in the beating.

On September 30, 1981, J.R. was arraigned on petition No. 81—J—15399, charging him with aggravated battery, and on October 14, 1981, A.J., T.M., and L.R., were arraigned on petitions Nos. 81—J—16177, 81—J—16170, and 81—J—16139, charging them with simple battery.

On A.J.'s scheduled trial date of November 30, 1981, he demanded trial, and the State moved for and received a continuance. On the next trial date, April 5, 1982, the petition against A.J. was SOL'd by the State. Although there is no report of proceedings for October 29, 1982, the half-sheet indicates that the State had filed a motion to reinstate the petition, which was entered by Judge Barish and the cause continued to April 6, 1983. On February 24, 1983, the State advanced and reset the case, represented to Judge Magnes that the case was in fact reinstated, and moved to set the case for trial on April 18, 1983. On March 21, 1983, Judge Barish continued the State's motion to reinstate. On April 8, 1983, the case was continued to April 29, 1983, for rearraignment. On April 29, 1983, the record indicates that A.J. was rearraigned by Judge Barish and the case was again set for trial, on September 16, 1983. On September 2, 1983, the State's motion to reinstate was formally argued and was sustained over the minor's motion to dismiss. The case then went to trial on September 16, 1983.

In the case of T.M., on the scheduled trial date of November 30, 1981, the State moved for and received a continuance. On April 5, 1982, T.M. demanded trial, and the State SOL'd the petition. On September 3, 1982, the State's motion to reinstate the petition was entered and continued to October 8, 1982. On October 8, 1982, the State's motion to reinstate was granted over the minor's objection and the case was set for trial on March 15, 1983. The case was then advanced and reset for trial. On April 11, 1983, T.M. was rearraigned and the case was reset for trial to September 16, 1983. On September 2, 1983, the State's motion to reinstate was formally argued and sustained over T.M.'s motion to dismiss. The case then went to trial starting on September 16, 1983.

On L.R.'s first trial date, November 30, 1981, he demanded trial and the State moved for and received a continuance. At the next trial date, April 5, 1982, the State SOL'd the petition against L.R. Although there is again no report of proceedings for October 29, 1982, the half-sheet indicates that the State filed a motion to reinstate that was entered by Judge Barish and continued to April 6, 1983. On February 24, 1983, the State advanced and reset the case, represented to Judge Magnes that the case had in fact been reinstated, and moved to set the case for trial. On March 21, 1983, Judge Barish continued the State's motion to reinstate. On April 8, 1983, the case was again continued, this time for rearraignment. On April 29, 1983, L.R. was rearraigned by Judge Barish and the case was set for trial on September 16, 1983. On September 2, 1983, the State's motion to reinstate was

formally argued and sustained over L.R.'s motion to dismiss. The case then went to trial on September 16, 1983.

On November 4, 1983, J.R.'s case was set for trial on January 20, 1982. On January 20, 1982, J.R. was late getting to court and the victim was not present. The case was continued for trial to June 2, 1982. On the June 2, 1982, trial date, the State SOL'd the case. Again, although there is no report of proceedings for October 29, 1982, the half-sheet indicates that the State filed a motion to reinstate that was entered and continued by Judge Barish to April 6, 1983. On February 24, 1983, the State advanced and reset the case, representing to Judge Magnes that the case was in fact reinstated. The State also moved to set the case for trial. On March 21, 1983, the State's motion to reinstate was continued. On April 8, 1983, the case was again continued. On April 29, 1983, private counsel appeared for J.R.; the minor was then rearraigned and the case set for trial. On September 2, 1983, the State's motion to reinstate was formally argued and sustained over J.R.'s motion to dismiss. The case then went to trial on September 16, 1983.

At the formal hearing on the State's petition to reinstate, all the minors involved sought a dismissal on the basis that they were denied due process of law by the State's extraordinary delay in bringing them to trial. The State responded by pointing out that the complainant was mentally retarded and dependent on his father for transportation to court and for support while at court. Since the father had been hospitalized twice for cardiovascular surgery, the State argued that the delay was excusable. The record also indicates that in August of 1982, Judge Barish received a letter from either the complainant's father or a neighbor asking why the case had been dismissed (SOL'd by the State in April and June of 1982). Judge Barish forwarded the letter to the State's Attorney's office. This letter apparently prompted the State to move for reinstatement, because the half-sheets in the records indicate that the State so moved initially in October of 1982. On March 21, 1983, the State represented that it was the complainant's retardation and reliance on his father that was causing the delay. After the motions to dismiss were denied on September 2, 1983, the adjudicatory hearings began on September 16, 1983, resulting in adjudications of delinquency on February 24, 1984.

The only issue presented to this court for review is whether the minors were denied due process where their adjudicatory hearings did not commence until nearly two years after the filing of delinquency petitions and their initial arraignment. For the following reasons, we vacate the findings of delinquency and order the discharge of the mi-

nors as to this matter.

■ The Juvenile Court Act is designed to ensure that the best interests of the minor respondent, his family, and society are served. (Ill. Rev. Stat. 1981, ch. 37, par. 701—2(1); *In re Armour* (1974), 59 Ill. 2d 102, 104-05, 319 N.E.2d 496.) To that end, the manner in which the Act is to be enforced must be consistent with due process guarantees and must comport with all notions of fairness and impartiality that are provided in the adult criminal setting. *In re Winship* (1970), 397 U.S. 358, 365, 25 L. Ed. 2d 368, 376, 90 S. Ct. 1068, 1073; *In re C.T.* (1983), 120 Ill. App. 3d 922, 925, 458 N.E.2d 1089.

The Juvenile Court Act provides that an adjudicatory hearing shall be set within 30 days from the filing of a delinquency petition. (Ill. Rev. Stat. 1981, ch. 37, par. 704—2.) The word "shall" in the statute, however, is directory, not mandatory, and the mere fact that an adjudicatory hearing is neither set nor held within the 30-day period does not necessarily warrant a discharge. (*In re Armour* (1974), 59 Ill. 2d 102, 104-05, 319 N.E.2d 496.) In *People v. Lawson* (1977), 67 Ill. 2d 449, 367 N.E.2d 1244, though, our supreme court held that a trial court had the authority to dismiss an indictment or criminal complaint where preindictment delays have actually and substantially prejudiced the defendant in clear violation of due process guarantees. 67 Ill. 2d 449, 456.

The *Lawson* reasoning was adopted in the juvenile setting by this court in *In re C.T.* (1983), 120 Ill. App. 3d 922, 926-27, 458 N.E.2d 1089. This court stated that the juvenile court had an inherent authority to dismiss a delinquency petition for due process violations, independent of any statutorily granted power in the Juvenile Court Act, similar to a trial court's power under *Lawson*. (120 Ill. App. 3d 922, 927.) Using the criteria established in *Lawson*, an evaluation of substantial delays, perhaps warranting a dismissal, is two-fold. "First, the respondent must come forward with a clear showing of actual and substantial prejudice. If this is shown, then the burden shifts to the State to show the reasonableness of the delay. The delay must amount to an 'unequivocally clear denial of due process.'" (*In re C.T.* (1983), 120 Ill. App. 3d 922, 927.) Finally, as stated in the *Lawson* case:

"If this two-step process ascertains both substantial prejudice and reasonableness of a delay, then the court must make a determination based upon a balancing of the interests of the defendant and the public. Factors the court should consider, among others, are the length of the delay and the seriousness of the crime." *People v. Lawson* (1977), 67 Ill. 2d 449, 459.

In resolving the first prong of the two-step process, we believe

that substantial prejudice can be presumed by the court if the delay is sufficiently long as to warrant such an action. (See *People v. Love* (1968), 39 Ill. 2d 436, 443, 235 N.E.2d 819; *People v. Howell* (1983), 119 Ill. App. 3d 1, 8, 456 N.E.2d 236; *People v. Nichols* (1978), 60 Ill. App. 3d 919, 925, 377 N.E.2d 815.) We shall presume prejudice under these facts.

Three of the minors, A.J., T.M. and L.R., were arraigned on delinquency petitions on October 14, 1981, and the fourth minor, J.R., had been arraigned earlier on September 30, 1981. In the case of the three minors arraigned on October 14, the State SOL'd the cases on April 5, 1982, and J.R.'s case was SOL'd on June 2, 1982; the SOLs came roughly six months after A.J. and L.R. had demanded trial, and T.M. and J.R. demanded trials on the date the cases were SOL'd. Also, the initial delays from the first scheduled trial date were all on motion of the State. The SOL status of the cases further contributed to the delay in this matter and does not vitiate prejudice.

■ It is generally accepted that where charges are stricken on leave to reinstate, the statutory speedy trial period continues to run as long as a trial demand has been made. (*People v. Griffin* (1978), 58 Ill. App. 3d 644, 646, 374 N.E.2d 1031.) The nature of an SOL does nothing to relieve the accused of the anxiety and concern felt over the criminal accusation because the charges still lie against the accused, "albeit in a dormant state." This case lay dormant until October of 1982, when a letter from either the complainant's father or neighbor inquiring about the status of the cases, was received by Judge Barish. It was then that the State began reinstatement proceedings. Following the attempts at reinstatement in October of 1982, March of 1983, and September of 1983, the last date being when the motion was formally argued and the reinstatement formally sustained over the minors' motions to dismiss, the actual adjudicatory hearing did not begin until September 16, 1983, nearly two years after the alleged occurrence and subsequent arraignments. Such a delay does a gross disservice to the minors involved by erecting, through the SOL procedure, an unsecure sword of Damocles while they are, presumably, trying to get on with socially constructive lives. This delay has also effected a disservice on society by postponing proper legal mechanisms designed to nurture and protect society and by fostering a jaundiced view of those mechanisms in terms of their vitality and utility. Finally, the victim is disserved by being put through an extended legal proceeding with the concomitant frustrations and anxiety felt by waiting nearly two years to see his assailants brought firmly under the hand of juvenile law.

■■ Moreover, such delay is antithetical to the Juvenile Court Act which, with its "flexible" 30-day hearing requirement, evinces a legislative intent to resolve these matters more efficiently and quickly than in the adult criminal context. The nearly 700-day delay in this case cannot even be compared with the delay present in *In re Armour* (1974), 59 Ill. 2d 102, 319 N.E.2d 496, where this court stated, in the appellate opinion affirmed on appeal, that all "interests [would be] better served if an adjudicatory hearing is held two days late than by releasing the minor completely." (*In re Armour* (1973), 15 Ill. App. 3d 529, 536, 305 N.E.2d 47.) Nor are we persuaded by *In re M.A.* (1985), 132 Ill. App. 3d 444, a case presenting the same issue as here and not cited by either party. There, a 17-month delay from the filing of the delinquency petition to the adjudicatory hearing did not warrant a dismissal of the petition in the absence of actual and substantial prejudice. (132 Ill. App. 3d 444, 446.) We note initially that the court in *M.A.* did not consider the possibility of presuming actual and substantial prejudice under the reasoning of *People v. Love* (1968), 39 Ill. 2d 436, 443, 235 N.E.2d 819. Also, upon close examination of *M.A.*, the opinion does not reflect the same degree of languid prosecutorial action present here. The nearly six-month SOL status of the cases against A.J., L.R., and T.M., and nearly four months against J.R., in conjunction with the delays preceding the SOL and following reinstatement attempts, suggests lackadaisical conduct that simply cannot be tolerated. Our legislature is also aware of this problem as the recent amendments to the Juvenile Court Act demonstrate. Effective July 1, 1985, after a delinquency petition has been filed, an adjudicatory hearing must be held within 120 days from the filing of a written demand for such hearing. Failure to conduct the post-demand hearing within 120 days shall, upon motion of the minor, result in a dismissal with prejudice. (Pub. Act. 83–1517, 9 Ill. Leg. Serv. 69, 76 (1984).) The amendments embody the tenor of the appellate opinion in *Armour* where this court stated that "[t]he threat of the loss of liberty should not indefinitely hang over a minor's head ***" (*In re Armour* (1973), 15 Ill. App. 3d 529, 536.) Therefore, as a matter of law, this court presumes the existence of actual and substantial prejudice to the minor respondents.

Given that presumption of prejudice, the burden now shifts to the State to show the reasonableness of the delay. (*In re C.T.* (1983), 120 Ill. App. 3d 922, 927, 458 N.E.2d 1089.) The State argued at the hearing on the motion to reinstate, and in its brief on appeal, that any delay is excusable and reasonable because of the complainant's mental retardation and dependency on his father for transportation to court

and for support while at court. The whole matter was complicated further when the father was twice forced to undergo cardiovascular surgery. Given that there is no showing of any deliberate attempt by the State to delay the proceedings, or to use the handicapped status of the complainant and his father against the minors herein, we might be persuaded to believe that the delay was reasonable. Even so, however, upon a balancing of the interests involved, namely, the interest of the minor respondents and the interests of society, we hold that the length of the delay from arraignment to the holding of the adjudicatory hearing amounts to a fundamental deprivation of due process warranting a discharge of the minors and a vacatur of their adjudications. See *People v. Lawson* (1977), 67 Ill. 2d 449, 459.

■ The overriding purpose of the Juvenile Court Act is remedial and preventative, not punitive. The statute seeks to aid wayward youths in pursuing and engaging in socially acceptable patterns of behavior. The predominant concern of the statute is to pursue a remedial course that is in the best interest of the minor involved. Of course, society also has an important interest in being protected from antisocial and criminal behavior perpetrated by juveniles. In this case, however, by the time the adjudicatory hearing commenced, some of the minors were already of adult status. It can hardly be conceived how the benevolent purpose of the Juvenile Court Act, service oriented in nature, can be accomplished when the parties involved are beyond their formative and malleable years. Rather, in this situation, the adjudicatory process strikes a punitive blow contrary to the intended purpose of the Act. Moreover, it took a letter from an interested person to the judge below, inquiring why the cases had been dismissed nearly four months earlier on the State's motion SOL, to prompt the State to begin reinstatement proceedings. Society's interest in being free of antisocial behavior is outweighed by the inordinate delay involved in this case. If the minors were to learn from their transgression, then waiting nearly two years to proceed with the legal mechanism designed to provide them with the setting and services to engage in that learning process is both illogical and incomprehensible.

■ Though we are acutely aware that the victim in this case was severely beaten, it defies reason why it took the State so long to effect the adjudicatory process. On September 2, 1983, even the trial judge stated: "You don't need the father. You need the victim. [Y]ou have got a large police staff at your disposal. Let them help." The record in all the cases is clear that the complainant was never in court prior to June of 1982, nearly nine months after the occurrence and the father was only hospitalized during part of 1982-83. Even as-

suming the father was still unable to transport his son to court during March of 1983, there is no explanation for the delay from March of 1983 to September of 1983, again nearly one-half of a year. The "flexible" 30-day rule cannot absorb a 700-day delay. Upon these facts, the balance tips in favor of the minor respondents.

For the foregoing reasons, this court, on due process grounds, vacates the minors' adjudications of delinquency and orders their discharge as to this matter.

Adjudication of delinquency is vacated and minors are discharged.

Vacated; minors discharged.

HARTMAN and BILANDIC, JJ., concur.